Nos. 2024-2159, 2024-2162

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ARCHROMA U.S., INC.,

Plaintiff – Appellee

v.

DEPARTMENT OF COMMERCE, TEH FONG MIN (TFM) INTERNATIONAL CO, LTD.,

Defendants – Appellants

INTERNATIONAL TRADE COMMISSION,

Defendant.

Appeal from the United States Court of International Trade in
Case No. 22-00354, Judge M. Miller Baker

**RESPONSE BRIEF OF PLAINTIFF-APPELLEE
ARCHROMA U.S., INC.**

Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Tatiana E. Sainati, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
202-719-7000

*Counsel to Archroma U.S., Inc.*

January 21, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2024-2159, 2024-2162 |
| **Short Case Caption** | Archroma U.S., Inc. v. Department of Commerce |
| **Filing Party/Entity** | Archroma U.S., Inc. - Plaintiff-Appellee |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/14/2024

Signature: /s/ Timothy C. Brightbill

Name: Timothy C. Brightbill

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Archroma U.S., Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Christopher D. Cazenave, Jones Walker LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .............................................................1
II.     STATEMENT OF RELATED CASES.....................................1
III.    STATEMENT OF THE ISSUE ...........................................1
IV.     STATEMENT OF THE CASE .............................................2
        A.      Statutory Background.............................................3
        B.      The Implementing Regulations .............................8
        C.      The SOBA Sunset Reviews...................................10
        D.      Proceedings Before the CIT ...............................11
V.      SUMMARY OF ARGUMENT....................................................13
VI.     ARGUMENT..............................................................14
        E.      Standard of Review .............................................14
        F.      Commerce Exceeded its Statutory Authority in Adopting
        the Notice of Intent Requirement to Create a New Basis for
        Revoking Orders without a Sunset Review.................................16
                1.      Commerce does not have inherent authority to
                issue any procedural rule it sees fit. ...................................16
                2.      A general grant of basic regulatory authority does
                not enable Commerce to exceed specific statutory
                requirements. ...............................................................18
                3.      The plain language of the Tariff Act shows that
                Commerce can only revoke an order without review if a
                party fails to submit the Statutory Filing.............................19
VII.    CONCLUSION .........................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or
    Negots. ("COALITION") v. United States*,
    66 F.4th 968 (Fed. Cir. 2023) .................................................................... 18, 19

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ................................................................................... 19

*King v. Burwell*,
    576 U.S. 473 (2015) ................................................................................... 19

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................. 14, 15

*Merck & Co., Inc. v. U.S. Dep't of Health & Human Servs.*,
    385 F. Supp. 3d 81 (D.D.C. 2019) ................................................... 16, 18, 24

*NLRB v. Fin. Inst. Employees of Am., Local 1182*,
    475 U.S. 192 (1986) ............................................................................ passim

*Ragsdale v. Wolverine World Wide, Inc.*,
    535 U.S. 81 (2002) ........................................................................ 18, 21, 25

*Royal Brush Manufacturing, Inc. v. United States*,
    75 F.4th 1250 (Fed. Cir. 2023) .................................................................... 17

*Vermont Yankee Nuclear Power Corp. v. NRDC*,
    435 U.S. 519 (1978) ................................................................................... 17

**Statutes**

5 U.S.C. § 700 .......................................................................................... 15

5 U.S.C. § 706(2)(A) ................................................................................ 15

19 U.S.C. § 1516a(a)(1)(D) ................................................................. 11, 14

19 U.S.C. § 1516a(b)(1)(B)(ii) ............................................................ 14, 15

19 U.S.C. § 1675(c)(1)(A) ..................................................................4

19 U.S.C. § 1675(c)(2)...............................................................*passim*

19 U.S.C. § 1675(c)(2)................................................................21

19 U.S.C. § 1675(c)(3)................................................................21

19 U.S.C. § 1675(c)(2)(A) .............................................9, 20, 22, 23

19 U.S.C. § 1675(c)(2)(B) ........................................................9, 20

19 U.S.C. § 1675(c)(2)(C) ......................................................20, 24

19 U.S.C. § 1675(c)(3)(A) ..................................................5, 20, 22

19 U.S.C. § 1677(9) ..............................................................5, 6

19 U.S.C. § 3512(d) ...........................................................3, 21

19 U.S.C. § 3513(a)(2) ........................................................8, 18

**Regulations**

19 C.F.R. § 351.218(d)(1)(i) ...............................................................9

19 C.F.R. § 351.218(d)(1)(ii) ..............................................................9

19 C.F.R. § 351.218(d)(3)(i) ............................................................9, 23

19 C.F.R. § 351.218(d)(3)(ii)(E) .........................................................23

**Administrative Materials**

*Certain Stilbenic Optical Brightening Agents from the People's
    Republic of China*, 77 Fed. Reg. 27,423
    (Dep't Commerce May 10, 2012).......................................................10

*Certain Stilbenic Optical Brightening Agents from the People's
    Republic of China and Taiwan*, 82 Fed. Reg. 55,990
    (Dep't Commerce Nov. 27, 2017) .....................................................10

*Certain Stilbenic Optical Brightening Agents from Taiwan*,
    77 Fed. Reg. 27,419 (Dep't Commerce May 10, 2012) ....................................10

*Initiation of Five-Year (Sunset) Reviews,*
    87 Fed. Reg. 59,779 (Dep't Commerce Oct. 3, 2022).........................................10

*Procedures for Conducting Five-year ("Sunset") Reviews of*
    *Antidumping and Countervailing Duty Orders,*
    63 Fed. Reg. 13,516 (Dep't Commerce Mar. 20, 1998).......................................9

**Other Authorities**

Uruguay Round Agreements Act, Statement of Administrative Action,
    H.R. Rep. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040.............*passim*

## I.    INTRODUCTION

On behalf of Plaintiff-Appellee Archroma U.S., Inc. ("Archroma") we respectfully submit this response to the December 11, 2024 opening brief filed by Defendant-Appellant the U.S. Department of Commerce ("Commerce" or "the Agency"), Opening Br. of Def.-Appellant Commerce (Dec. 11, 2024), ECF No. 29 ("Commerce Br.") and the December 18, 2024 opening brief filed by Defendant-Appellant Teh Fong Min (TFM) International Co, Ltd. ("TFM"), Opening Br. of Def.-Appellant TFM (Dec. 18, 2024), ECF No. 30 ("TFM Br.").

## II.    STATEMENT OF RELATED CASES

Like Commerce and TFM, Archroma is unaware of any currently pending cases before this or any other court that stand to directly affect or be affected by this appeal.

## III.    STATEMENT OF THE ISSUE[1]

Whether Commerce exceeded its authority under 19 U.S.C. § 1675(c) by adopting a regulation that creates an additional, extra-statutory basis to revoke an antidumping duty order without a five-year review to determine whether the order remains necessary to counteract dumping and prevent the continuation or recurrence of material injury to the relevant domestic industry.

---

[1]    Archroma agrees with the jurisdictional statement provided by Defendant-Appellants, and therefore does not provide a separate statement of jurisdiction, pursuant to Fed. Cir. R. 28(b).

## IV.    STATEMENT OF THE CASE

Antidumping and countervailing duty orders generally sunset after five years unless a domestic interested party timely submits information required by the Tariff Act.  If Commerce does not receive the requisite information from any domestic interested party, the order will be terminated.  If, on the other hand, Commerce receives the statutorily required information, the Agency and the U.S. International Trade Commission ("the Commission") must collectively undertake a review to determine whether the order remains necessary to ensure a level playing field for the domestic industry.

This appeal arises from the revocation of antidumping orders on Stilbenic Optical Brightening Agents ("SOBA") from the People's Republic of China ("China") and Taiwan.  Archroma—a domestic producer of such agents—met the regulatory and statutory requirement of filing a "substantive" response containing the information required by the Tariff Act to support five-year reviews.  Commerce nevertheless revoked the orders without conducting a review because Archroma missed, by six days, an earlier regulatory deadline to file a "notice of intent" to participate, even though this filing is not required by the statute.  The U.S. Court of International Trade ("CIT") struck down the notice of intent regulation because it allowed Commerce to revoke an order despite timely receipt of the information required by statute to trigger five-year reviews.  This appeal followed.

## A. Statutory Background

In 1994, Commerce amended the Tariff Act of 1930 to implement the provisions of the Uruguay Round agreements—a series of multilateral trade agreements negotiated between the United States and other sovereigns. Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040. As the Statement of Administrative Action ("SAA") accompanying the implementing Uruguay Round Agreements Act explains, the Uruguay Round agreements required "a number of changes to U.S. law." *Id.* at 807, 1994 U.S.C.C.A.N. at 4151.[2] These changes included the first ever "time limit on the imposition of antidumping measures," which—prior to the 1994 amendments—remained in effect in perpetuity. *Id.* at 817, 1994 U.S.C.C.A.N. at 4158. During the negotiations, some governments advocated for the immediate revocation of any measures that had been in place for more than five years, but "*{t}he United States resisted these efforts*."[3] *Id.* The final Uruguay Round agreements instead "give{} interested parties the right to request authorities to review whether the continued imposition of dumping duties is necessary to offset dumping or

---

[2]    The SAA is "an authoritative expression of the United States concerning the interpretation and application" of the amendments to the Tariff Act at issue in this case—including the provisions governing sunset reviews. *See* 19 U.S.C. § 3512(d); *see also* H.R. Rep. 103-316, 1994 U.S.C.C.A.N. 4040.

[3]    Unless otherwise indicated, all emphases have been added and all quotations have been cleaned up.

whether injury would be likely to continue or recur if the duty were removed or varied." *Id.* at 816-817, 1994 U.S.C.C.A.N. at 4158. This right ensures that domestic industries remain protected from unfair trade practices that continue to harm them, or that may recur if protections are lifted. *See id.* at 807, 1994 U.S.C.C.A.N. at 4151 (explaining that changes requiring five-year sunset reviews "do not diminish in any meaningful way the level of protection afforded to U.S. industries from dumped imports").

Reflecting this right, Congress amended the U.S. trade laws to require Commerce and the Commission to each undertake certain reviews—typically known as "sunset reviews"—of antidumping and countervailing duty orders. New section 1675(c) "establishe{d} the procedural and basic substantive rules to be applied by Commerce and the Commission in conducting" such reviews. *Id.* at 879, 1994 U.S.C.C.A.N. at 4205. Specifically, the statute mandates the automatic initiation of an initial sunset review five years "after the date of publication" of an antidumping or countervailing duty order. 19 U.S.C. § 1675(c)(1)(A). If both agencies determine that an order should remain in force, the statute requires automatic initiation of subsequent reviews every five years "after the date of publication of . . . a determination . . . to continue an order." *Id.* § 1675(c)(1)(C).

The statute is explicit that the *only* circumstance in which the agencies can eschew the review and simply revoke an existing order is where no domestic

interested party indicates a willingness to participate in the review process. To afford such parties an opportunity to express this willingness, the statute requires Commerce to publish "a notice of initiation" "{n}ot later than 30 days before the fifth anniversary of" the date of publication of the initial or continuance order. *Id.* § 1675(c)(2). As part of the notice of initiation, the statute directs Commerce to "request that interested parties submit" certain information (the "Statutory Filing"), specifically:

> (A)  a statement expressing their willingness to participate in the review by providing information requested by {Commerce} and the Commission,
>
> (B)  a statement regarding the likely effects of revocation of the order or termination of the suspended investigation, and
>
> (C)  such other information or industry data as {Commerce} or the Commission may specify.

*Id.* § 1675(c)(2).

Failure to submit a Statutory Filing has serious ramifications. If "no interested party responds to the notice of initiation," Commerce "shall . . . within 90 days after the initiation of a review, revok{e} the order" in what is essentially an administrative default judgment. *Id.* § 1675(c)(3)(A).[4] On the other hand, if Commerce receives a

---

[4]    For most purposes, the statute defines the term "interested party" to include entities such as foreign producers of the goods subject to an investigation/order and importers.  19 U.S.C. § 1677(9).  However, for the unique purposes of the § 1675(c)(3)(A) requirement, the statute defines the term solely by reference to §§ 1677(9)(C) – (G), which provide that an "interested party" includes "a

response from a domestic interested party, it "shall conduct a review . . . to determine . . . whether revocation of the . . . order . . . would be likely to lead to a continuation or recurrence of dumping or a countervailable subsidy (as the case may be) and of material injury." *See id.* § 1675(c)(1)(C).

So long as Commerce receives a response from a domestic interested party, Commerce must conduct a five-year review. Specifically, under section 1675(c)(3), if Commerce receives an "inadequate response to a notice of initiation," it "may issue . . . a final determination based on the facts available," but it is nonetheless required to conduct a review. *See id.* § 1675(c)(3). In other words, the statute mandates that Commerce bypass a review and revoke an order if no domestic interested party provides the content required by § 1675(c)(2), but requires Commerce (and the Commission) to conduct a review if any such party submits a Statutory Filing—even if that Statutory Filing is inadequate.

In providing for "automatic initiation" of five-year reviews, rather than requiring parties to actively request them, and then permitting revocation without review only if no domestic interested party responded, Congress sought to "avoid placing an unnecessary burden *on the domestic industry* and promote efficiency of administration" including by "providing an effective means of evaluating the level

---

manufacturer, producer, or wholesaler in the United States of a domestic like product," as well as unions and trade associations representing workers or businesses engaged in such activities. *Id.* § 1677(9)(C).

of interest of all affected parties and the need for a full-fledged review." SAA at 879, 1994 U.S.C.C.A.N. at 4205-6. At the same time, Congress wanted to ensure that the changes to the Tariff Act—including the new time limits for antidumping orders—did not "diminish in any meaningful way the level of protection afforded U.S. industries from dumped imports." *Id.* at 807, 1994 U.S.C.C.A.N. at 4151. The notice requirement set forth in the statute furthers these goals by placing the burden on Commerce to notify domestic interested parties of a review, and giving domestic industry the ability to ensure that Commerce conducts that review. *Id.* at 879, 1994 U.S.C.C.A.N. at 4205-6. While a review based on the facts available may be conducted where the responses by domestic interested parties (or others) is inadequate, so long as there is a domestic interested party response, the agency cannot simply revoke an order without review. *Id*.

Congressional insistence on at least some review upon timely receipt of a Statutory Filing reflects the overall purpose of ensuring that the new sunset review process did not diminish the protections afforded to U.S. industries under the trade laws. Indeed, as the authoritative SAA explains, Commerce and the Commission are advised against "determin{ing} that there is no likelihood of continuation or recurrence of injury simply because {an} industry has recovered," since antidumping and countervailing duty orders should have a "beneficial effect on the industry," and improvements "may suggest that the state of the industry is likely to

deteriorate if the order is revoked or the suspended investigation terminated." *Id.*
at 884, 1994 U.S.C.C.A.N. at 4210. Likewise, the agencies are warned that an
industry may be "vulnerable" and in need of ongoing protection if "other factors"
beyond imports are "contributing to overall injury," since these factors "may
demonstrate that an industry is facing difficulties from a variety of sources and is
vulnerable to dumped or subsidized imports." *Id.* at 885, 1994 U.S.C.C.A.N.
at 4210. Similarly reflecting Congress's special solicitude for domestic industries
with respect to the sunset review requirement, the Act requires the agencies to

> {e}xpedite, to the maximum extent practicable . . . an investigation of
> a petition filed within two years of revocation of an order . . . involving
> imports of the same subject merchandise, notwithstanding the
> maximum time limits established by the statute for the conduct of
> investigations. Expeditious conduct of investigations will be especially
> important following revocation or termination under the new sunset
> provisions required by the Agreements and implemented in section
> 751(c).

*Id.* at 891, 1994 U.S.C.C.A.N. at 4215. This requirement reflects legislative concern
for righting a wrong done by an ill-advised revocation.

### B. <u>The Implementing Regulations</u>

Through the Tariff Act, Congress granted Commerce the basic regulatory
authority to "issue such regulations, as may be necessary to ensure that any provision
of this Act, or amendment made by this Act . . . is appropriately implemented{.}"
19 U.S.C. § 3513(a)(2). As relevant here, Commerce issued regulations that impose
two new deadlines on domestic interested parties that intend to participate in a sunset

review. Both regulatory deadlines require such parties to respond to a notice of initiation prior to the 90-day statutory deadline for revocation. The first requires a domestic interested party to file a "notice of intent to participate" within 15 days of Commerce publishing the notice of initiation. 19 C.F.R. § 351.218(d)(1)(i). As Commerce explains, the information required by this notice of intent is "minimal." *Procedures for Conducting Five-year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders*, 63 Fed. Reg. 13,516, 13,517-18 (Dep't Commerce Mar. 20, 1998). It also differs from the information the Tariff Act directs Commerce to seek from domestic interested parties to show willingness to participate in a sunset review. *Compare* 19 C.F.R. § 351.218(d)(1)(ii) *with* 19 U.S.C. § 1675(c)(2).

In addition to the notice of intent, Commerce imposed a second deadline that requires any interested party to submit a "complete substantive response" within 30 days of the publication of the notice of initiation. 19 C.F.R. § 351.218(d)(3)(i). Here, the regulation tracks 19 U.S.C. § 1675(c)(2)(A)-(B) word-for-word in setting forth what the substantive submission must include. *Compare* 19 C.F.R. § 351.218(d)(3)(i) *with* 19 U.S.C. § 1675(c)(2)(A)-(B). Thus, a domestic interested party that provides a substantive response to a notice of initiation provides all the information required by Congress under the Act to trigger a sunset review well in advance of the statute's 90-day revocation deadline.

## C.    **The SOBA Sunset Reviews**

This case centers on antidumping orders on SOBA from Taiwan and China that were originally published in 2012, *see Certain Stilbenic Optical Brightening Agents from Taiwan*, 77 Fed. Reg. 27,419 (Dep't Commerce May 10, 2012) (amended final deter. of sales at less than fair value and antidumping duty order); *Certain Stilbenic Optical Brightening Agents from the People's Republic of China*, 77 Fed. Reg. 27,423 (Dep't Commerce May 10, 2012) (amended final deter. of sales at less than fair value and antidumping duty order), and continued in 2017, *see Certain Stilbenic Optical Brightening Agents from the People's Republic of China and Taiwan*, 82 Fed. Reg. 55,990 (Dep't Commerce Nov. 27, 2017) (continuation of antidumping duty orders).

On October 3, 2022—three days after the deadline Commerce set for itself in its own regulations—Commerce published a notice of initiation for new five-year reviews for both SOBA orders. *See Initiation of Five-Year (Sunset) Reviews*, 87 Fed. Reg. 59,779 (Dep't Commerce Oct. 3, 2022). The notice instructed domestic interested parties to submit "notice{s} of intent to participate" within 15 days—by October 18—and to file "complete substantive responses" with the information required by the Act (*i.e.*, the Statutory Filing) within 30 days—by November 2. *See id.* at 59,780.

Archroma filed its notice of intent six days late but timely submitted its Statutory Filing. Appx0001014-001016. Archroma asked Commerce to accept the belated notice of intent, *id.*, but Commerce refused, Appx001035-001036. Archroma sought reconsideration, Appx001038-001056, which Commerce likewise denied, Appx001082-001084.

Then, despite having timely received Archroma's Statutory Filing, Commerce revoked both SOBA orders on the grounds that "no domestic interested party responded to the sunset review notice of initiation by the applicable deadline." Appx001089. The Commission followed suit, ending its review. Appx001295.

### D.    Proceedings Before the CIT

Archroma sued under 19 U.S.C. § 1516a(a)(1)(D), challenging Commerce's revocation of the antidumping orders. The CIT concluded that Commerce's regulation—requiring a notice of intent as a prerequisite to considering a Statutory Filing—violated the Tariff Act. Appx17. In so holding, the CIT rejected Commerce's position that its regulatory deadline "represents a lawful interpretation" of § 1675(c) because the Tariff Act does not define what "constitutes no response" and it is thus "reasonable" for the Agency to determine that failure to submit a notice of intent within fifteen days of the *Federal Register* notice initiating a review amounts to "no response." Appx14-15.

The CIT explained that Commerce's interpretation of the statutory text failed because Commerce read § 1675(c)(3)(A) in isolation. Appx15. In so doing, Commerce ran afoul of the whole-text canon, which demands that "the meaning of a statute . . . be looked for, not in any single section but in all the parts together and in their relation to the end in view." *Id.* (quoting Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* 168 (2012)). Applying the whole-text canon "resolve{d} the case." *Id.* Specifically, the CIT explained that the Tariff Act only allows Commerce to revoke an order if "no {domestic} interested party responds to the notice of initiation *under this subsection*." *Id.* (quoting 19 U.S.C. § 1675(c)(3)(A)) (emphasis in original). "This subsection" defines the "notice of initiation" as the "notice of initiation of a review" that "request{s} that interested parties submit" specified information including (A) a statement of willingness to participate in the review; (B) a statement regarding the likely effects of revocation of the order; and (C) other information or data sought by Commerce or the Commission. *See* Appx15-16 (quoting 19 U.S.C. § 1675(c)(2)). Reading § 1675(c)(2) and (c)(3) together—as a whole text—clarifies that "no response to notice of initiation" means no response to "a solicitation for the substantive content that § 1675(c)(2) instructs Commerce to seek." Appx16. Thus, under the Statute, Commerce can only revoke an order without conducting a review if no interested party submits a timely Statutory Filing. Here, the CIT found that Commerce

"jumped the statutory gun" and exceeded its authority, Appx 17-18, by relying on an extra-statutory requirement to revoke the order despite receiving a timely Statutory Filing. In so doing, Commerce denied Archroma its right to participate in the review. *See* Appx16-17, n.19.

## V.     SUMMARY OF ARGUMENT

Commerce, joined by TFM,[5] argues that the notice of intent requirement must be permissible because it is procedural in nature and Commerce has authority to fashion whatever procedural rules it deems appropriate. But an agency's "interest in insuring the integrity of its procedures does not empower it to adopt measures exceeding its statutory authority." *NLRB v. Fin. Inst. Employees of Am., Local 1182*, 475 U.S. 192, 207 (1986). The relevant issue is thus not whether the notice of intent requirement is a procedural or substantive rule, but whether in enacting a regulation that creates an extra-statutory basis to revoke an order without review—and denying interested parties the right to participate in such reviews—Commerce exceeded the bounds of its statutory authority. The answer to that question is yes. The text of the Tariff Act demonstrates that Congress has only authorized Commerce to terminate a review if no domestic interested party submits a Statutory Filing. If a domestic interested party submits a Statutory Filing, Commerce must conduct a review. The

---

[5]     TFM states that it "supports and adopts the Government's arguments articulated in its opening brief." TFM Br. at 2.

legislative history confirms that in crafting the statute, Congress carefully balanced the interest in administrative efficiency against the domestic industry's interest in avoiding material injury from unfairly imported products. Commerce's notice of intent requirement upsets that balance and violates the statute by creating an extra-statutory basis to revoke an existing order without review.

## VI.    <u>ARGUMENT</u>

### E.    <u>Standard of Review</u>

Archroma agrees with Commerce that, because this case arises under 19 U.S.C. § 1516a(a)(1)(D), the Court must "hold unlawful any determination, finding or conclusion found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Commerce Br. at 17 (quoting 19 U.S.C. § 1516a(b)(1)(B)(ii)). TFM states that it "agrees with the Government's articulation of the applicable standard of review," but then asserts that the court "must reverse a determination that is unsupported by substantial evidence on the record." TFM Br. at 2. To the extent TFM argues that the substantial evidence standard of review applies here, Archroma disagrees. Because this case arises under 19 U.S.C. § 1516a(a)(1)(D), the arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law standard applies. *See* 19 U.S.C. § 1516a(b)(1)(B)(ii).

Both Commerce and TFM ignore that this case directly implicates the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*,

603 U.S. 369 (2024).[6]  *Loper Bright* made clear that where, as here, "the meaning of a statute {is} at issue, the judicial role {is} to interpret the act of Congress, in order to ascertain the rights of the parties." *Id.* at 385-86 (quoting *Decatur v. Paulding*, 14 Pet. 497, 515 (1840)).  In fulfilling this mandate, the courts "appl{y} their own judgments," and must "set aside any {agency} action inconsistent with the law as {the courts} interpret it." *Id.* at 391-92.  Independent judicial interpretation is critical because "agencies have no special competence in resolving statutory ambiguities. Courts do." *Id.* at 400-01.  It thus falls to the courts to "interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences," *id.* at 403, to find "the best" reading of the statute, *id.* at 400 ("In the business of statutory interpretation, if it is not the best, it is not permissible.").  In so doing, the court's singular goal is "always, to independently interpret the statute and effectuate the will of Congress{.}" *Id.* at 395.

---

[6]     *Loper Bright* concerned the standard of review applied by courts in cases arising under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 700 *et seq*. *See generally* 603 U.S. 369.  In resolving this question, the Court interpreted the APA's provisions on judicial review which articulates the same standard of review as the Tariff Act. *Compare* 5 U.S.C. § 706(2)(A) (stating courts must "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . not in accordance with law") *with* 19 U.S.C. § 1516a(b)(1)(B)(ii) (stating courts must "hold unlawful any determination, finding, or conclusion found . . . to be . . . not in accordance with law").

**F.** **Commerce Exceeded its Statutory Authority in Adopting the Notice of Intent Requirement to Create a New Basis for Revoking Orders without a Sunset Review**

Commerce argues that it has the authority to "impose the predicate procedural requirement of a notice of intent to participate, and then revoke an antidumping duty order where no domestic interested party has submitted such a notice of intent," Commerce Br. at 19, because Commerce possesses "inherent authority to adopt procedures to manage {its} own affairs," *id.* at 20 as well as explicit implementation authority, *id.* at 21-22, and nothing in § 1675(c)(2) limits the agency's ability to set its own procedures, *id.* at 25. The government proceeds from a flawed premise and errs at every subsequent turn.

**1.** **Commerce does not have inherent authority to issue any procedural rule it sees fit.**

First, the relevant analysis begins not with the nature of the notice of intent requirement but with "the text of the statute upon which the . . . {requirement} rests." *Merck & Co., Inc. v. U.S. Dep't of Health & Human Servs.*, 385 F. Supp. 3d 81 (D.D.C. 2019). This is because "{e}ven broad rulemaking power must be exercised within the bounds set by Congress." *Id.* at 90. Put differently, Commerce does not have inherent authority to enact any procedural rule it sees fit. Rather, Commerce has only the authority granted to it by Congress through the Tariff Act. *See NLRB*, 475 U.S. at 201-02 (rejecting argument that Board required "wide degree of discretion in establishing the procedures and safeguards necessary" to fulfill

statutory mandate because "the question . . . is whether the Board's new rule exceeds the Board's statutory authority").

The cases cited by Commerce are inapposite. In *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978), there was no question that the agency acted within the confines of its enabling statute. *See* 435 U.S. at 535 (noting that agency "employed all the procedures required by" the relevant statute "and more"). *Vermont Yankee* thus addressed a different question than that presented here, namely whether an agency has an obligation "to employ procedures *beyond* those required by statute." *Id.* at 524 (emphasis added). Here, in contrast, the question is whether Commerce's notice of intent requirement comports *with* the requirements of the statute.

*Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023), is similarly inapplicable. In that case, the court, in dicta, cited *Vermont Yankee* for the unremarkable proposition that U.S. Customs and Border Protection has "inherent authority to utilize protective orders." 75 F.4th at 1260. That observation does not displace the bedrock rule that an agency's "interest in insuring the integrity of its procedures does not empower it to adopt measures exceeding its statutory authority." *NLRB*, 475 U.S. at 207. Thus, to determine whether Commerce exceeded its authority in adopting the notice of intent requirement, the court must look to the statutory text rather than the categorization of the rule.

## 2. A general grant of basic regulatory authority does not enable Commerce to exceed specific statutory requirements.

Commerce additionally argues that the notice of intent requirement is proper because Commerce has express authority under 19 U.S.C. § 3513(a)(2) to issue any regulations necessary to ensure the appropriate implementation of the Tariff Act. Commerce Br. at 21. This argument begs the question. Section 3513(a)(2) authorizes Commerce to "issue such regulations . . . as may be necessary to ensure that any provision of {the Tariff Act} . . . is appropriately implemented." *Id.* But that does not resolve whether a specific regulation appropriately implements those provisions. A regulation cannot plausibly be deemed necessary to implement a statute if it contradicts the purpose of the statute it purports to implement. *See Ragsdale*, 535 US at 86, 88 (invalidating a regulation agency purported to be "necessary to carry out the Act" because it was "contrary to the Act's remedial purpose"). Put differently, the Agency "may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into the law." *See id.* at 91; *see also Merck*, 385 F. Supp. 3d at 92. As elaborated further below, that is what Commerce did here in issuing a regulation that created an extra-statutory basis for revoking an order without conducting a sunset review.

The case cited by Commerce, *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. ("COALITION") v. United States*, 66 F.4th 968 (Fed. Cir. 2023), proves this point. There, this Court considered that an expedited-

review process adopted by Commerce "fits within the {statute's} grant of power to Commerce," because the process complied with the provisions of the Tariff Act. *Id.* at 977. This Court specifically reasoned that "{t}he SAA itself makes the connection between the expedited-review process" adopted by Commerce and the statutory provisions the expedited-review regulations implemented. *Id.* *COALITION* thus reinforces that an agency must always exercise its implementing authority in a manner consistent with the administrative structure enacted by Congress—and that this Court must interpret the relevant statute to ensure that the agency does not exceed the bounds of its statutory authority in the name of implementation.

> **3.    The plain language of the Tariff Act shows that Commerce can only revoke an order without review if a party fails to submit the Statutory Filing**

Commerce faults the CIT for invoking the whole-text canon to invalidate the notice of intent requirement. *See* Commerce Br. at 18. But it is a "fundamental canon of statutory construction that words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). This follows because the courts' "duty, after all is to construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015). The CIT thus performed its duty by "{a}pplying the whole-text canon of construction" to "resolv{e} this case." Appx15. And, as the CIT observed, considered as a whole, the statute makes plain that Commerce can

only revoke an order without a review if no domestic interested party submits the

Statutory Filing demanded by 19 U.S.C. § 1675(c)(2)(A)-(C). Appx16.

Section 1675(c)(3)(A), entitled "No response," states:

> If no interested party responds to the notice of initiation under this subsection, the administering authority shall issue a final determination, within 90 days after the initiation of a review, revoking the order or terminating the suspended investigation to which such notice relates.

The immediately preceding Section 1675(c)(2), entitled "Notice of initiation of review," states:

> Not later than 30 days before the fifth anniversary of the date described in paragraph (1), the administering authority shall publish in the Federal Register a notice of initiation of review under this subsection and request that interested parties submit—
>
> (A)   a statement expressing their willingness to participate in the review by providing information requested by the administering authority and the Commission,
>
> (B)   a statement regarding the likely effects of revocation of the order or termination of the suspended investigation, and
>
> (C)   such other information or industry data as the administering authority or the Commission may specify.

As the CIT concluded, "{r}eading (c)(2) and (c)(3) together—that is, in context—it's obvious that 'no response to the notice of initiation under this subsection' in § 1675(c)(3)(A) means no answer to a solicitation for the substantive content that § *1675(c)(2)(A)-(C)* instructs the agency to seek." Appx16. Thus, per the statute, Commerce can only revoke an order without review if no party responds to the request for a Statutory Filing required by § 1675(c)(2).

The legislative history—which is the "authoritative expression by the United States concerning the interpretation and application of" section 1675(c), 19 U.S.C. § 3512(d)—confirms that Congress carefully limited the circumstances in which Commerce can avoid a sunset review of an existing antidumping order to balance the interests of the agency and domestic industry. That history explains that the Tariff Act's sunset review provisions were crafted to ensure that the new process did not "diminish . . . the level of protection afforded U.S. industries from dumped imports." SAA at 807, 1994 U.S.C.C.A.N. at 4151. 19 U.S.C. §§ 1675(c)(2)-(3) work to achieve this goal by allowing an order to automatically sunset without review only after affording the domestic industry an opportunity to participate and by requiring Commerce to undertake at least some review *even if the Statutory Filing is inadequate. See* SAA at 879, 1994 U.S.C.C.A.N. at 4205-06 (explaining that the agency will revoke an order if there is no domestic interested party response, but will conduct a review—albeit one potentially based on the "facts available"—if the responses it receives are "inadequate".)

By adopting the notice of intent requirement, Commerce circumvented these review procedures and subverted the careful balance Congress struck in determining when review of a sunsetting order is required. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88, 91, 94 (2002) (invalidating Department of Labor regulation enacted "in addition to a notice provision explicitly set out in the statute"

because it was "inconsistent with the administrative structure that Congress enacted into law").

Commerce nevertheless defends the notice of intent requirement on grounds that "Section 1675(c)(2) by its plain terms does not impose any limitations on the agency's ability to set procedures for the conduct of sunset reviews – including the establishment of filing deadlines and the creation of a notice of intent requirement – beyond requiring Commerce to issue a notice of initiation seeking the prescribed categories of information." Commerce Br. at 25. TFM adopts this argument and adds that the regulatory requirement is permissible because 19 U.S.C. § 1675(c)(2)(A) does not "specify the information to be requested" and because the notice of intent requirement simply implements section 1675(c)(2)(A). TFM Br. at 3. These arguments fail at every level.

As an initial matter, Section 1675(c)(3)(A) provides that if no party responds to the notice of initiation requesting information identified in Section 1675(c)(2), Commerce "shall issue a final determination, *within 90 days* after the initiation of a review revoking the order{.}" Commerce's regulations require domestic interested parties to file a response to the notice of initiation corresponding with the information identified in 19 U.S.C. §1675(c)(2) within 30 days after the notice's publication. 19 C.F.R. § 351.218(d)(3)(i); *see also* 19 U.S.C. § 1675(c)(2). Thus, a domestic interested party that files such a response within thirty days of the initiation

notice provides the information that Congress required well in advance of the statute's 90-day revocation deadline. By requiring an additional, distinct, and earlier submission for a domestic interested party to prevent revocation of an order, Commerce has placed a burden on the domestic industry that is neither contemplated by the statutory text nor meaningfully correlated with Commerce's own statutory deadlines.

Commerce itself appears to concede that the statute requires the Agency to publish an initiation notice requesting interested parties to submit all of the information required by 19 U.S.C. § 1675(c)(2). In other words, Commerce (rightfully) reads the statute as not giving Commerce the option of bifurcating or trifurcating responses. In any event and as noted above, Commerce explicitly requires interested parties to submit all the specific information required by section 1675(c)(2)—including the specific information required by section 1675(c)(2)(A)— as part of the "substantive response to a notice of initiation." *See* 19 C.F.R. § 351.218(d)(3)(ii)(E) (repeating text of 19 U.S.C. § 1675(c)(2)(A)). The request for a substantive response is thus the request for the Statutory Filing required by section 1675(c)(2) of the Tariff Act. And it is only if no party responds to the request for a substantive response that Commerce can revoke an order without further inquiry.

Even if the statute is silent regarding certain aspects of the required filing of the information specified in 1675(c)(2)(A), such as the deadline for the filing or the "other information or industry data" that Commerce may request as part of the filing, this does not make Commerce's notice of intent requirement lawful. 19 U.S.C. § 1675(c)(2)(C). "An agency's general rulemaking authority plus statutory silence does not . . . equal congressional authorization." *Merck*, 385 F. Supp. 3d at 92. The Tariff Act "establishes a specific election procedure to decide whether" to conduct a sunset review. *NLRB* 475 U.S. at 204; *see also* SAA at 879, 1994 U.S.C.C.A.N. at 4205 (explaining that Section 1675(c) "establish{es} the procedural . . . rules to be applied by Commerce and the Commission in conducting five-year reviews"). "While {Commerce} is charged with responsibility to administer this procedure, the {Tariff} Act gives {Commerce} no authority to require {interested parties} to follow other procedures"—like the notice of intent requirement—as a prerequisite to participating in such reviews. *See NLRB*, 475 U.S. at 204.

In this regard, Commerce's argument that it must have authority to establish and enforce deadlines or else it "could never reject {} a filing as untimely, which would of course hinder the agency's ability to timely complete sunset reviews" misses the mark. *See* Commerce Br. at 23. The issue raised in this case is not whether Commerce's 30-day deadline for submitting the content prescribed by 19 U.S.C. § 1675(c)(2) exceeded Commerce's authority. Rather, the issue is

whether Commerce exceeded its authority in imposing an entirely new procedural requirement—the notice of intent—and using that requirement as an independent basis to revoke an antidumping order without a sunset review despite timely receipt of the Statutory Filing. Even if the "additional notice {of intent} requirement is valid, the categorical penalty {Commerce} imposes for its breach"—*i.e.*, revocation of antidumping duty orders without review—"is contrary to the Act's . . . design." *Ragsdale*, 535 U.S. at 88.

TFM adds that the notice of intent requirement should nevertheless be upheld because it "serves to alert potential respondent interested parties that they may need to file a substantive response{.}" TFM brief at 3. But as the legislative history reflects, in drafting the sunset review statute, Congress was primarily concerned about protecting the *domestic industry*, not foreign importers. *See* SAA at 807-08, 1994 U.S.C.C.A.N. at 4151. And even if Commerce intended to protect respondent interested parties, it does not follow that Commerce is authorized to impose a new procedural requirement, unanticipated by Congress and inconsistent with the text and purpose of the statute, as a basis for revoking an antidumping order without a review. *See Ragsdale*, 535 U.S. at 91 ("Regardless of how serious the problem an administrative agency seeks to address . . . it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law.").

The notice of intent requirement "upsets the accommodation drawn by the statute," because it purports to allow Commerce to revoke an order even if a domestic interested party timely shows the willingness and ability to participate that the statute requires. *NLRB*, 475 U.S. at 203. For that reason, the requirement exceeds Commerce's statutory authority. *Id.* at 204.

**VII.      CONCLUSION**

For the foregoing reasons, Archroma respectfully requests that the Court affirm the decision of the CIT.

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Maureen E. Thorson, Esq.
Tatiana Sainati, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
202-719-7000

*Counsel to Archroma, U.S., Inc.*

</div>

January 21, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>2024-2159, 2024-2162</u>

**Short Case Caption:** <u>Archroma U.S., Inc. v. Commerce</u>

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>6,039</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>01/21/2025</u>

Signature: <u>/s/ Timothy C. Brightbill</u>

Name: <u>Timothy C. Brightbill</u>