## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————

ARCHROMA U.S., INC.,

Plaintiff-Appellee,

v.

DEPARTMENT OF COMMERCE, TEH FONG MIN (TFM)
INTERNATIONAL CO, LTD.,

Defendants-Appellants,

INTERNATIONAL TRADE COMMISSION,

Defendant.

———————————

On Appeal from the Court of International Trade, in case no. 22-00354, Judge M.
Miller Baker.

———————————

## REPLY BRIEF FOR THE DEPARTMENT OF COMMERCE

———————————

*Of Counsel:*

AYAT MUJAIS
*Senior Attorney*

*Office of the Chief Counsel for Trade
Enforcement & Compliance
U.S. Department of Commerce*

YAAKOV M. ROTH
*Acting Assistant Attorney General*

PATRICA M. McCARTHY
*Director*

FRANKLIN E. WHITE, JR.
GEOFFREY M. LONG
*Attorneys, Commercial Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 307-0159*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

I.    Archroma's Chosen Cases Do Not Support Its Position ......................................3

II.   Archroma Does Not Succeed in Distinguishing Our Cited Authority................7

III.  The Specific Regulatory Authority of 19 U.S.C. § 3513(a)(2) Confirms Commerce's Authority.............................................................................. 11

IV.  The Language of §§ 1675(c)(2) and (3) Does Not Prohibit Commerce From Requiring a Notice of Intent......................................................... 13

CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases:**

*Comm. Overseeing Action for Lumber Int'l Trade*
   *Investigations or Negots. v. United States*, 66 F.4th 968 (Fed. Cir. 2023).............11, 12, 13

*Doe, 1 v. Federal Election Commission*, 920 F.3d 866 (D.C. Cir. 2019) ...................................4

*Dofasco Inc. v. United States*, 390 F.3d 1370 (Fed. Cir. 2004) ...............................................10

*Dongtai Peak Honey Indus. Co., Ltd. v. United States*,
   777 F.3d 1343 (Fed. Cir. 2015) ...................................................................................... 9, 11

*FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134 (1940) ........................................................8

*FCC v. Schreiber*, 381 U.S. 279 (1965) ....................................................................................8

*JBF RAK LLC v. United States*, 790 F.3d 1358 (Fed. Cir. 2015) ............................................9

*M S Int'l, Inc. v. United States*, 32 F.4th 1145 (Fed. Cir. 2022) ...................................2, 9, 10

*Merck & Co., Inc. v. U.S. Dept. of Health & Human Serv.*,
   385 F. Supp. 3d 81 (D.D.C. 2019), *aff'd*, 962 F.2d 531 (D.C. Cir. 2020) ................. 3, 4

*Merck*, 385 F. Supp. 2d at 90-91 ..............................................................................................4

*Nat. Labor Relations Bd. v. Fin. Inst. Employees of Am., Local 1182*,
   475 U.S. 192 (1986) .....................................................................................................5, 10

*PSC VSMPO-Avisma Corp. v. United States*,
   688 F.3d 751 (Fed. Cir. 2012) ........................................................................................ 9, 11

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) ...................................6, 7, 11, 18

*Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) ...............................9

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ........................................................................................................ 7, 8

**Statutes:**

Tariff Act of 1930,

   19 U.S.C. § 1675(a)(2)(B)(iv)................................................................................................9

19 U.S.C. § 1675(a)(2)(C) ..................................................................9

19 U.S.C. § 1675(c)(1) ....................................................................12

19 U.S.C. § 1675(c)(2) ....................................................................19

19 U.S.C. § 1675(c)(2)(A)-(C) ........................................................14

19 U.S.C. § 1675(c)(3)(A)-(B) ........................................................15

19 U.S.C. § 1677(9)(A) ...................................................................19

19 U.S.C. § 1677c(a)(1) ....................................................................9

19 U.S.C. § 1677e .............................................................................15

19 U.S.C. § 1677f-1(e) ...............................................................12, 13

Uruguay Round Agreements Act, Pub. L. 103-465, § 220(a), 108 Stat. 4809, 4861-63 (1994)..................................................................................................1

19 U.S.C. § 3513(a)(2) ............................................................passim

42 U.S.C. § 1302(a) ...........................................................................4

42 U.S.C. § 1395hh(a)(1) ..................................................................4

## Regulations:

19 C.F.R. § 351.218(d)(1) ............................................................3, 5

19 C.F.R. § 351.218(d)(1)(i)..............................................................16

## Other Authorities:

Statement of Administrative Action, H.R. Rep. No. 103-316 (1994),
    *reprinted at* 1994 U.S.C.C.A.N. 4040 ............................ 2, 12, 15, 19

## Federal Register Notices:

*Procedures for Conducting Five-year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders*, 63 Fed. Reg. 13,516, 13,517-18 (Dep't of Commerce Mar. 20, 1998) ............................................7, 16, 17

# INTRODUCTION

Plaintiff-appellee, Archroma U.S., Inc. (Archroma), missed the deadline for a simple procedural filing – a notice of intent to participate in the sunset reviews of two antidumping duty orders. Archroma had not sought an extension to the deadline. Nor, after missing the deadline, did Archroma attempt to demonstrate extraordinary circumstances such that the Department of Commerce might have accepted the filing out of time. Rather than availing itself of those options, Archroma instead now attacks the requirement itself, asserting illegality in Commerce's longstanding requirement that domestic interested parties wishing to take part in a sunset review provide the minimal information required by the notice of intent to participate.

Archroma's arguments cannot succeed. In our opening brief, we demonstrated that Commerce has authority to set procedural requirements in its own administrative proceedings, and that authority is confirmed by the Uruguay Round Agreements Act, Pub. L. 103-465, § 220(a), 108 Stat. 4809, 4861-63 (1994) (URAA or Act). Just as Commerce may set deadlines in sunset reviews, so too may Commerce require, as a procedural predicate to the conduct of a full review, the filing of the notice of intent. The whole-text canon of statutory interpretation does not support Archroma's position, because 19 U.S.C. § 1675(c)(2), on which Archroma bases its argument that Commerce's actions were *ultra vires*, does not limit Commerce's power to impose procedural requirements to be met before a domestic interested party may submit the information called for by the statute.

In response, Archroma points to a handful of decisions in which this Court and the Supreme Court have held that an agency's actions were beyond the scope of the agency's authority. But none of Archroma's cases support its claim in the present case, because these cases do not address an agency's authority to set internal procedures to accomplish statutorily-mandated tasks, much less do any of the cases address Commerce's authority to set procedures in the execution of its powers under the antidumping laws. More apposite than Archroma's chosen cases are the several precedential decisions of this Court authorizing Commerce to set such procedures, for example *M S International, Inc. v. United States*, 32 F.4th 1145 (Fed. Cir. 2022). And yet, despite our discussion of *M S International* in our opening brief, Archroma does not even cite the case, much less distinguish it. Archroma also does not succeed in explaining away 19 U.S.C. § 3513(a)(2), which expressly authorizes Commerce to make regulations to effectuate the URAA.

Archroma's textual argument is also unconvincing, because § 1675(c)(2) does not even suggest that Commerce's general authority to set procedures is limited by the statute's delineation of the information that Commerce is to solicit in the agency's notice of initiation of a sunset review. Nor do the statute or the accompanying Statement of Administrative Action, H.R. Rep. No. 103-316 (1994), *reprinted at* 1994 U.S.C.C.A.N. 4040, evince any "special solicitude for domestic industries with respect to the sunset review requirement." Applee. Br. at 8, ECF No. 31. Contrary to that claim, § 1675(c) provides no free pass to domestic interested parties – they must

2

comply with Commerce's procedural requirements.  The Court of International Trade's judgment is an unwarranted intrusion into Commerce's lawful setting of internal procedures, and should be reversed.

## ARGUMENT

## I.    Archroma's Chosen Cases Do Not Support Its Position

Archroma primarily relies on three cases to refute our argument that Commerce's notice of intent requirement is lawful, but none of Archroma's cases impact the analysis.  First, Archroma cites *Merck & Co., Inc. v. U.S. Department of Health & Human Services*, 385 F. Supp. 3d 81, 90 (D.D.C. 2019), *aff'd*, 962 F.2d 531 (D.C. Cir. 2020), for the proposition that "[e]ven broad rulemaking power must be exercised within the bounds set by Congress."  Applee. Br. at 16.

Contrary to Archroma's suggestion, however, we do not assert that Commerce has "inherent authority to issue any procedural rule it sees fit."  Applee. Br. at 16.  Our point instead is that the notice of intent requirement at 19 C.F.R. § 351.218(d)(1) falls well within Commerce's authority to set its internal procedures, and particularly within the URAA grant of regulatory authority to Commerce.  *See* 19 U.S.C. § 3513(a)(2).  With the specific issue in this appeal correctly framed, *Merck* does not support Archroma's argument.  In *Merck*, the Department of Health and Human Services (HHS) had ordered pharmaceutical companies to disclose their wholesale pricing in drug advertisements, even though the Social Security Act (SSA) did not provide HHS with express authorization to impose such a requirement.  *See* 385 F.

Supp. 3d at 89. The district court rejected the Government's assertion that this action

fell within HHS's authority to make rules and regulations necessary to carry out the

"administration" of Medicare and Medicaid. *See id.* at 90 (discussing 42 U.S.C.

§ 1302(a) and 42 U.S.C. § 1395hh(a)(1)). The district court instead concluded that

"administration" as used in the statutes referred to running and managing the

programs, and that HHS's rule exceeded that remit, because it "regulate[d] the

conduct of market actors who [were] not direct participants in the Medicare or

Medicaid programs." *Merck*, 385 F. Supp. 2d at 90-91.

     In reaching that conclusion, the district court expressly distinguished instances

where "the agency aimed its rule at . . . the agency's own operations." *Id.* at 94.

Specifically, the district court disagreed with the Government's reliance on *Doe, 1 v.*

*Federal Election Commission*, 920 F.3d 866 (D.C. Cir. 2019), because the *Merck* court

viewed *Doe, 1* as "simply concern[ing] the extent of the Federal Election

Commission's ability to disclose its investigative files." *Merck*, 385 F. Supp. 3d at 93

(citing *Doe, 1*, 920 F.3d at 870-71). In other words, because *Doe, 1* addressed a matter

of internal agency procedure, the *Merck* court found the case to be distinguishable.

Here, Commerce's notice of intent requirement plainly implicates Commerce's own

operations in conducting the sunset review prescribed by § 1675(c)(1), rather than, for

example, attempting to regulate entities not otherwise subject to the antidumping

laws, and so *Merck* has no force.

Archroma also is not assisted by *National Labor Relations Board v. Financial Institution Employees of America, Local 1182*, 475 U.S. 192 (1986) (*NLRB*). *See* Applee. Br. at 16. Archroma claims that the case stands for the proposition that "Commerce has only the authority granted to it by Congress through the Tariff Act." *Id.* (citing *NLRB*, 475 U.S. at 201-202). But similar to the district court in *Merck*, the Supreme Court in *NLRB* was focused on an agency regulation very different from the notice of intent requirement at 19 C.F.R. § 351.218(d)(1). In *NLRB*, The question presented was "whether a rule of the [NLRB] that requires that nonunion employees be permitted to vote in a certified union's decision whether to affiliate with another union is consistent with the National Labor Relations Act." 475 U.S. at 194. The relevant statute "establishe[d] a specific election procedure to decide whether . . . employees desire[d] a change in a certified union's representative status." *Id.* at 204. The Supreme Court held that while the NLRB was charged with responsibility to administer this statutory procedure, the law "[gave] the Board no authority to require unions to follow other procedures in adopting organizational changes." *Id.* Thus, rather than regulating its own operations, the NLRB was attempting to regulate the means of determining whether a union should represent employees. Like *Merck*, that regulation is plainly different from Commerce's ordering of its *own* procedures to effectuate the statutory mandate that the agency conduct sunset reviews.

Archroma's third primary authority is *Ragsdale v. Wolverine World Wide, Inc.*,

535 U.S. 81 (2002). *See* Applee. Br. at 18. Archroma cites this case in opposition to

our position, Applnt. Br. at 22-23, that Commerce's authority to set procedures in

sunset reviews is specifically provided by 19 U.S.C. § 3513(a)(2), which authorizes

Commerce to "issue such regulations . . . as may be necessary to ensure that any

provision of [the URAA] . . . is appropriately implemented."

*Ragsdale* arose under the Family Medical Leave Act of 1993 (FMLA). The

FMLA placed notification requirements on employers, accompanied by a private right

of action wherein the employee was required to show prejudice from an employer's

notification violations. *See Ragsdale*, 555 U.S. at 88. The Department of Labor,

however, established more comprehensive and individualized requirements,

accompanied by a penalty wherein an employer who failed to advise an employee that

leave would count against the 12-week FMLA allotment was required to grant an

additional 12 weeks of leave, regardless of the amount already taken. *See id.* The

employee was not required to show prejudice from the notification failure.

Archroma cites *Ragsdale* for the proposition that "[a] regulation cannot plausibly

be deemed necessary to implement a statute if it contradicts the purpose of the

statute." Applee. Br. at 18 (citing *Ragsdale*, 535 U.S. at 86, 88). In *Ragsdale*, however,

the Supreme Court concluded that the challenged regulation "alter[ed] the FMLA's

cause of action [29 U.S.C. § 2617] in a fundamental way: It relieves employees of the

burden of proving any real impairment of their rights and resulting prejudice." *Id.* at

90. Here in contrast, the notice of intent requirement does not alter any statutory obligation or entitlement in "a fundamental way." To the contrary, Archroma agrees with Commerce that the notice of intent requirement is "minimal." Applee. Br. at 9 (quoting *Procedures for Conducting Five-year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders*, 63 Fed. Reg. 13,516, 13,517-18 (Dep't of Commerce Mar. 20, 1998)). This minor procedural requirement, which domestic interested parties have long satisfied with minimal effort, does not implicate the Supreme Court's concerns in *Ragsdale*.

## II. Archroma Does Not Succeed in Distinguishing Our Cited Authority

We have demonstrated above that *Merck*, *NLRB*, and *Ragsdale* are inapposite. Nor does Archroma succeed in distinguishing the cases on which we relied in our opening brief. We cited *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519 (1978), for the proposition that "[a]bsent constitutional constraints or extremely compelling circumstances[,] the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." Applnt. Br. at 20 (quoting *Vt. Yankee*, 435 U.S. at 543 (cleaned up)).

In response, Archroma claims that *Vermont Yankee* is limited to situations where a litigant asserts that an agency must go further than it has, "to employ procedures *beyond* those required by statute." *See* Applee. Br. at 17 (quoting, with

added emphasis, *Vt. Yankee*, 435 U.S. at 524). In Archroma's telling, the current case

presents the opposite problem – Commerce has gone too far. But that supposed

distinction falls apart with a reading of the Supreme Court's analysis, which articulates

a longstanding rule that agencies are empowered to design procedural rules in

furtherance of their statutory responsibilities:

> Even apart from the Administrative Procedure Act this Court has
> for more than four decades emphasized that the formulation of
> procedures was basically to be left within the discretion of the
> agencies to which Congress had confided the responsibility for
> substantive judgments. In *FCC v. Schreiber*, [381 U.S. 279, 290]
> (1965), the Court explicated this principle, describing it as "an
> outgrowth of the congressional determination that administrative
> agencies and administrators will be familiar with the industries
> which they regulate and will be in a better position than federal
> courts or Congress itself to design procedural rules adapted to the
> peculiarities of the industry and the tasks of the agency involved."
> The Court there relied on its earlier case of *FCC v. Pottsville
> Broadcasting Co.*, [309 U.S. 134, 138] (1940), where it had stated
> that a provision dealing with the conduct of business by the
> Federal Communications Commission delegated to the
> Commission the power to resolve "subordinate questions of
> procedure . . . [such as] the scope of the inquiry, whether
> applications should be heard contemporaneously or successively,
> whether parties should be allowed to intervene in one another's
> proceedings, and similar questions."

*Vt. Yankee*, 435 U.S. at 524-25; *see also id.* at 543-44 (citing these cases and noting the

"very basic tenet of administrative law" that agencies should be free to fashion their

own procedures). *Vermont Yankee* thus establishes that agencies are empowered to

resolve "subordinate questions of procedure," irrespective of whether a litigant is

asserting that the agency must impose more procedures than specifically prescribed by Congress, or fewer.

The Court has relied on *Vermont Yankee* in five precedential decisions addressing the legality of agency procedures in international trade and customs proceedings. *See Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1261-62 (Fed. Cir. 2023) (holding that U.S. Customs and Border Patrol (CBP) has "inherent authority" to create regulations to allow protective orders, given the well-established practice of utilizing protective orders in litigation and "the absence of any statutory or regulatory prohibition of such orders"); *M S Int'l*, 32 F.4th at 1153 (holding that Commerce could set a 30-day deadline for parties to request a hearing, where 19 U.S.C. § 1677c(a)(1) was silent on the matter); *JBF RAK LLC v. United States*, 790 F.3d 1358, 1367 (Fed. Cir. 2015) (holding that Commerce did not act *ultra vires* when it issued a post-preliminary determination prior to final results, despite such a determination not being referred to in 19 U.S.C. § 1675(a)(2)(B)(iv) and (C)); *Dongtai Peak Honey Indus. Co., Ltd. v. United States*, 777 F.3d 1343, 1351 (Fed. Cir. 2015) (holding that Commerce was entitled to discretion in its rejection of a respondent's extension requests and supplemental responses, due to respondent's failure to meet regulatory requirements); *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761 (Fed. Cir. 2012) (holding that Commerce lawfully rejected an untimely factual submission).

We cited *Royal Brush*, *M S International*, *Dongtai Peak Honey*, and *PSC-VSPMO* in our opening brief, and Archroma does not refute their applicability here. With

respect to *Royal Brush*, Archroma asserts that the "unremarkable" proposition that CBP possesses inherent authority to utilize protective orders "does not displace the bedrock rule that an agency's 'interest in insuring the integrity of its procedures does not empower it to adopt measures exceeding its statutory authority.'" Applee Br. at 17 (quoting *NLRB*, 475 U.S. at 207). We agree that the Court must consider the statutory context in which an agency acts but, again, *NLRB* arose in an entirely different context, where the agency attempted to impose regulatory requirements that were not supported by law. *NLRB* does not impact this Court's more specific holdings in *Royal Brush* and other cases, focused on matters of internal agency procedure.

Most conspicuously with respect to our previously-cited cases, Archroma does not even cite *M S International*, where in response to the appellant's contention that the relevant statute contained no 30-day deadline, this Court held that "Commerce may set such deadlines where the statute is silent, *Dofasco Inc. v. United States*, 390 F.3d 1370, 1372 (Fed. Cir. 2004), and must be permitted to enforce them in order to administer the trade remedy laws." *M S Int'l*, 32 F.4th at 1153 (cleaned up). By ignoring *M S International*, Archroma fails to explain why, given that Commerce is free under this Court's precedents to set deadlines not established by statute, the agency is not also free to require a procedural filing that Archroma agrees is minimal in nature. Archroma also does not cite or refute our reliance on *Dongtai Peak Honey* or *PSC-VSPMO*, which we offered for the point that absent constitutional constraints or

extremely compelling circumstances, courts will defer to the judgment of an agency regarding the development of the agency record. *See* Applnt. Br. at 21 (citing *Dongtai Peak Honey*, 777 F.3d at 1351, and *PSC VSMPO,* 688 F.3d at 760).

## III. The Specific Regulatory Authority of 19 U.S.C. § 3513(a)(2) Confirms Commerce's Authority

Commerce's general authority to set agency procedure is confirmed by the URAA, which authorizes Commerce to "issue such regulations . . . as may be necessary to ensure that any provision of [the URAA] . . . is appropriately implemented." 19 U.S.C. § 3513(a)(2). This statutory provision provides a "grant of regulatory-implementation power to Commerce." *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968 (Fed. Cir. 2023) (*COALITION*).

Archroma responds that § 3513(a)(2) "does not resolve whether a specific regulation appropriately implements those provisions." Applee. Br. at 18. Archroma further asserts that "[a] regulation cannot plausibly be deemed necessary to implement a statute if it contradicts the purpose of the statute it purports to implement." *Id.* (citing *Ragsdale*, 535 U.S. at 86, 88). Again, however, the question presented is not whether an agency might theoretically overstep its authority to set procedures. The question instead is whether the notice of intent requirement is such an overstep.

Moreover, the notice of intent requirement is not contrary to the purpose of the sunset review statute. Archroma is mistaken in its assertion that the "overall

purpose" § 1675(c) is to "ensur[e] that the new sunset review process did not diminish the protections afforded to U.S. industries under the trade laws." Applee Br. at 7. As Archroma acknowledges, prior to the enactment of § 1675(c) in 1994, antidumping orders "remained in effect in perpetuity." Applee. Br. at 3 (citing SAA at 817, 1994 U.S.C.C.A.N. at 4158). If protecting domestic industries from dumping were Congress's "overall purpose," then Congress would have simply left in place the prior rule that orders would never expire. Instead, Congress enacted a law whereby orders must be revoked after five years, absent specific findings by Commerce and the International Trade Commission (ITC). *See* 19 U.S.C. § 1675(c)(1). Domestic entities still have "protection . . . from dumped imports. Applee. Br. at 7 (quoting SAA at 807, 1994 U.S.C.C.A.N. at 4151). But first Commerce must determine whether imports are in fact being dumped. The statutory regime does not reflect "special solicitude" for domestic industry, Applee. Br. at 8, such that Commerce is prohibited from subjecting domestic entities to minimal procedural requirements in order to make such determinations.

Nor does Archroma succeed in distinguishing *COALITION*, where this Court held that Commerce "had statutory authority to adopt [an] expedited-review process as procedures for implementing statutory provisions that authorize individualized determinations in [countervailing duty] proceedings," based on the statute addressing the determination of individual countervailable subsidy rates, 19 U.S.C. § 1677f-1(e), and 19 U.S.C. § 3513(a)(2). *COALITION*, 66 F.4th at 971. Archroma attempts to

minimize *COALITION* based on the Court's statement that "'[t]he SAA itself makes the connection between the expedited-review process' and adopted by Commerce and the statutory provisions the expedited-review regulations implemented." Applee. Br. at 19 (quoting *COALITION*, 66 F.4th at 977). In Archroma's view, the case therefore stands for the proposition that "this Court must interpret the relevant statute to ensure that the agency does not exceed the bounds of its statutory authority in the name of implementation." Applee. Br. at 19.

We do not discount the Court's role in deciding whether Commerce has exceeded its statutory powers, based on the language and context of the statute. *See, e.g.*, *COALITION*, 66 F.4th at 978 (holding that, given the permissive nature of § 1677f-1(e)(2), Commerce was not precluded from developing regulations to arrive at individual rate determinations through procedures not specified by statute). But because Commerce has general authority to set internal procedures, and specific authority with respect to sunset reviews pursuant to § 3513(a)(2), the question reduces to whether some provision of § 1675(c) creates an exception to Commerce's authority, thus prohibiting the notice of intent. As explained in our opening brief and again in the following section, § 1675(c) creates no such exception.

## IV. The Language of §§ 1675(c)(2) and (3) Does Not Prohibit Commerce From Requiring a Notice of Intent

We have demonstrated above that Archroma is incorrect in its assertions that Commerce lacks general power to set procedures in sunset reviews, and that the

notice of intent requirement is inconsistent with the alleged purpose of § 1675(c).

Archroma does no better with its textual arguments. *See* Applee. Br. at 19-26.

Archroma first follows the CIT's reasoning, with reference to the language of

§ 1675(c)(2)(A)-(C) and § 1675(c)(3)A). *See* Applee. Br. at 20. But as we

demonstrated in our opening brief, § 1675(c)(2) by its plain terms does not limit

Commerce's ability to set procedures for the conduct of sunset reviews. *See* Applnt

Br. at 25. The subsection does require Commerce to publish a notice of initiation and

seek three categories of information prescribed by statute, namely a statement of

interested parties' willingness to participate in the sunset review, a statement regarding

likely effects of revocation of the order, and such other information as Commerce or

the ITC may specify. *See* 19 U.S.C. § 1675(c)(2)(A)-(C). But the subsection does not

prohibit Commerce from structuring sunset reviews, for example by setting deadlines

for the submission of information sought pursuant to § 1675(c)(2)(A)-(C), or by

requiring prior notices of intent to participate from domestic interested parties. The

total absence of any prohibition of such procedural steps, along with consideration of

the URAA as a whole, can only lead to the conclusion that Commerce has not

overstepped its authority by requiring a procedural filing as a predicate to the agency

accepting a domestic party's submission of the information sought pursuant to

§ 1675(c)(2)(A)-(C), and continuing to a full sunset review.

 In addition to its unavailing textual argument, Archroma again asserts that it is

deserving of special protection under the statute, because in Archroma's view the

URAA is not intended to diminish "the level of protection afforded U.S. industries from dumped imports."  Applee. Br. at 21 (quoting SAA at 807, 1994 U.S.C.C.A.N. at 4151).  Archroma continues on to assert that "19 U.S.C. §§ 1675(c)(2)-(3) work to achieve this goal by allowing an order to automatically sunset without review only after affording the domestic industry an opportunity to participate and by requiring Commerce to undertake at least some review *even if the Statutory Filing is inadequate*."  Applee. Br. at 21.  Archroma is correct that the statute differentiates between situations where no domestic party responds to the notice of initiation, which requires revocation of an order, and where any parties submit inadequate responses to the request for the information described in § 1675(c)(2)(A)-(C), in which case Commerce or the ITC may make a final determination based on facts available, without further investigation, in accordance with 19 U.S.C. § 1677e.  *See* 19 U.S.C. § 1675(c)(3)(A)-(B).  But the regulatory requirement of a notice of intent does not upset the statutory distinction between the absence of a domestic-party response and the inadequacy of any party's response, because the notice of intent serves the clear purpose of § 1675(c)(3)(A), which is to end reviews at an early point if no domestic interested party cares to see an order continued, without requiring respondent parties to prepare and submit the information called for by § 1675(c)(2)(A)-(C).  *See* SAA, 1994 U.S.C.C.A.N. at 4206 (stating that "[n]ew section [1675(c)(3)] is intended to eliminate needless reviews").

Archroma asserts that the notice of intent is "a burden on the domestic industry that is neither contemplated by the statutory text nor meaningfully correlated with Commerce's own statutory deadlines." Applee. Br. at 23. The first shortcoming of this argument is that the trial court and Archroma agree with Commerce that the notice of intent is *not* burdensome. The CIT characterized the required notice of intent as a "procedural filing," Appx8, and as a "threadbare document," Appx17, requiring only a "bare-bones statement" of the party's intent to participate in the review and "basic factual details" about the entity. Appx7. And as noted above, Archroma agrees with Commerce that the burden is "minimal." *See* Applee. Br. at 9 (quoting 63 Fed. Reg. at 13,517-18).

The second shortcoming of Archroma's argument on this score is that the notice is indeed meaningfully correlated with Commerce's own statutory deadlines, contrary to Archroma's assertion. Applee. Br. at 23. That is clear from the requirement itself, because it is plainly focused on securing basic information about domestic party participation soon after initiation of the sunset review. *See* 19 C.F.R. § 351.218(d)(1)(i) (requiring domestic-part notices of intent within 15 days of initiation). Commerce explained this correlation when it issued the interim final rule implementing the notice of intent requirement, in 1998, stating that the filing helps Commerce and other interested parties determine whether a full sunset review will be required, early in the statutorily-prescribed review window:

> The requirement that domestic interested parties notify the
> Department of their intention to participate prior to the deadline
> for submission of substantive responses to both the Department
> and the International Trade Commission is intended to alleviate
> the burden on parties of having to prepare substantive responses
> in cases where there is no domestic party interest. This is
> because, where there is no domestic party interest in a particular
> case, the Department, pursuant to section [19 U.S.C.
> § 1675(c)(3)(A)], automatically will revoke the order or terminate
> the suspended investigation, as applicable. The Notice of Intent
> procedure is intended to eliminate needless reviews and promote
> administrative efficiency, consistent with the explanation in the
> House Report [accompanying the URAA bill] (H.R. Rep. No.
> 103-826, pt. 1 (1994)) at 56.

63 Fed. Reg. at 13,517. Archroma does not acknowledge this justification, much less

refute it. And the justification confirms what is clear from the statute, which is that

responses to the notice of initiation should assist Commerce and other interested

parties in determining whether there is sufficient domestic-party interest to warrant a

full sunset review.

Next, in response to our point that Archroma's reading of § 1675(c) could be

viewed as precluding Commerce from even setting a deadline for the submission of

responses to a notice of initiation, Archroma asserts that the silence of § 1675(c) with

respect to deadlines does not mean that Commerce's notice of intent requirement is

lawful. Applee. Br. at 24. Rather than meeting our argument that Archroma's reading

of § 1675(c) would prohibit Commerce from setting any deadlines for the submission

of the materials called for in § 1675(c)(2)(A)-(C), since the statute is silent regarding

deadlines for the submission of such materials, Archroma posits a distinction between

setting a deadline to submit the content required by § 1675(c)(2) and "imposing an entirely new procedural requirement . . . and using that requirement as an independent basis to revoke an antidumping order without a sunset review despite the timely receipt of the Statutory Filing." Applee. Br. at 24-25. This argumentation does not, however, establish any difference between a regulatory deadline for submitting information and a notice of intent to participate that, again, creates only a minimal burden. Perhaps hypothetically an agency's prerequisites *could* be so onerous as to raise due process and similar concerns, *see* Applnt. Br. at 23-24, but all here agree that is not the case.

Archroma continues on to assert that even if the notice of intent requirement is valid, the "categorical penalty" of revocation is contrary to the Tariff Act's design. Applee. Br. at 25 (quoting *Ragsdale*, 535 U.S. at 88). But *Ragsdale* does not assist Archroma because, as discussed above, the Supreme Court in that case was concerned that the agency's categorical penalty conflicted with the nature of Congress's remedy for failure to properly credit FMLA leave, which was, by its nature, case-by-case. *See Ragsdale*, 535 U.S. at 91. Here, in contrast, there is no conflict between the URAA and Commerce's internal procedures, for the reasons we have stated.

In response to the argument by defendant-intervenor, Teh Fong Min (TFM) International Co, Ltd., that the notice of intent should be upheld because it serves to alert potential respondent parties that they may need to file a substantive response, Archroma asserts that, in drafting § 1675(c), "Congress was primarily concerned

18

about protecting the *domestic industry*, not foreign importers." Applee. Br. at 25 (citing

SAA at 807-08, 1994 U.S.C.C.A.N. at 4151). But if protecting domestic industry were

Congress's only concern, then Congress would not have created a sunset review

process in the first place. And more to the point, § 1675(c) expressly contemplates

that foreign interested parties will have the opportunity to participate in sunset

reviews, by submitting substantive responses to the notice of initiation and otherwise

participating in the review. *See* 19 U.S.C. § 1675(c)(2) (requiring Commerce to solicit

information from "interested parties," which is defined in 19 U.S.C. § 1677(9)(A) to

include foreign manufacturers, producers, and exporters of subject merchandise).

## CONCLUSION

For these reasons and those stated in our opening brief, we respectfully request

that the Court reverse the judgment of the trial court.

Respectfully submitted,

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

PATRICIA M. McCARTHY
   *Director*

*/s/ Franklin E. White, Jr.*
FRANKLIN E. WHITE, JR.
   *Assistant Director*

*Of Counsel:*

AYAT MUJAIS
   *Senior Attorney*

   */s/ Geoffrey M. Long*
GEOFFREY M. LONG
   *Senior Trial Counsel*

*Office of the Chief Counsel for Trade*
*Enforcement & Compliance*

*Commercial Litigation Branch*
*Civil Division, U.S. Department of Justice*
*P.O. Box 480, Ben Franklin Station*

*U.S. Department of Commerce*

*Washington, DC 20044*
*(202) 307-0159*
*Geoffrey.M.Long@usdoj.gov*

March 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Circuit Rule 32(b)(1) because it contains 4,744 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Geoffrey M. Long*
Geoffrey M. Long